IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONICA S. POON, | ) | Case No. 3:16-cv-06 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| DIANNAH RAE DOM, REGINA ANN HARRIS, and SVC, LLC, *individually and t/a and d/b/a as* POINT PUB, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

On the early morning of Saturday, January 11, 2014, Monica Poon was hit by a drunk driver—Diannah Rae Dom. Poon sued Dom and Dom's passenger, Regina Ann Harris (whose car Dom was driving at the time), for negligence, and Point Pub—which was the last bar Dom consumed alcohol at that night—under Pennsylvania's Dram Shop Act, 47 Pa. Cons. Stat. § 4-493. Poon alleges that Point Pub served Dom alcohol while she was visibly intoxicated and that this was a proximate cause of the accident. Point Pub has now moved for summary judgment. Point Pub contends that there is no evidence that it served Dom alcohol while she was visibly intoxicated and argues that summary judgment in its favor is therefore appropriate.

This motion is a close call. Although there does not appear to be any direct evidence that Dom was visibly intoxicated at the time she was served by Point Pub, there is some circumstantial evidence that would allow a factfinder to conclude that it is more likely than not that Dom was visibly intoxicated when she was served. Summary judgment is therefore inappropriate, and Point Pub's motion will be denied.

## I. Facts

As the Court will explain in more detail in Section IV below, neither Point Pub nor Poon followed this Court's procedures governing motions for summary judgment. Their failure to do so complicates distilling the undisputed facts of this case, particularly because Point Pub included no factual materials with its motion. Ordinarily the Court would order the parties to resubmit their filings properly, but will not do so in this case because the materials submitted are sufficient to decide the motion.[1] The following facts are derived entirely from the evidence submitted by Poon (ECF Nos. 66-1 to 66-12), however, and should not be viewed as undisputed.

At approximately 1:20 a.m. on Saturday, January 11, 2014, Poon was walking alongside the edge of the street on the 600 block of Horner Street in Johnstown, Pennsylvania. (*See* ECF Nos. 66-2 at 53:6-11, 66-6 at 6-8.) In her deposition, Poon testified that she was in the street—rather than on the sidewalk—because there was snow and ice on the sidewalk. (ECF No. 66-2 at 53:16-23.) As she was walking, Poon was hit by a car driven by Dom. (*See* ECF No. 66-1 at 5.) Dom was operating Harris's car, and was driving Harris—who was in the front passenger seat—home when the accident occurred. (*Id.* at 5-6, 9.) Dom claims that she was driving at an approximate speed of 20 to 25 miles per hour when she hit Poon. (*Id.* at 9.)

Emergency services were called and Poon was transported to Conemaugh Hospital for treatment. (*See* ECF No. 66-6 at 6.) At approximately 1:26 a.m., at least three police officers also responded to the accident, including officers Reihart, Fisher, and Repak. (*See id.* at 2, 6-8.) These officers interacted with Dom and Harris and noticed signs that they were both intoxicated. The

---

[1] Though the Court notes that it could have flatly denied Point Pub's motion on the basis that it has not properly supported any of its assertions of fact. *See* Fed. R. Civ. P. 56(e)(2) & (4).

incident report prepared by officer Reihart states that he noticed "a strong odor of an alcoholic beverage coming from their person[s], blood[]shot glassy eyes, and slurred speech." (*Id.* at 6.) Officer Fisher's report states that "[b]oth females had slurred speech, blood[]shot eyes, and smelled of the odor of an intoxicating beverage." (*Id.* at 7.) Officer Repak's report states that he noticed similar signs of intoxication, and that while escorting Dom and Harris back to their car—they had gotten out and were some 50 feet from the car—Dom fell to the ground. (*Id.* at 8.) Officer Fisher then attempted to administer a field sobriety test on Dom. (*Id.* at 7.) Officer Fisher asked Dom to perform the "9 step heel to toe walk," but she did not properly perform this test and fell down on her back upon turning around, which officer Repak observed. (*Id.* at 7-8.) In addition, a witness to the accident interacted with Dom immediately after the accident. (*See* ECF No. 66-11 at 41-44.) In his deposition, he testified that Dom "was drunk," and that he knew this because of "[t]he way she was acting, the way her speech was slurred," and because she smelled of alcohol. (*Id.* at 43:20-44:2.)

Dom was arrested on suspicion of driving under the influence of alcohol. (ECF No. 66-6 at 3, 6.) She was transported to Conemaugh Hospital for a blood-alcohol test and her blood was drawn at 2:31 a.m. (*Id.* at 6.) That test revealed a blood-alcohol level of 0.176%. (*Id.*) Dom was charged with driving under the influence. (ECF No. 66-1 at 10.) This charge was resolved through Dom's acceptance into Cambria County's Accelerated Rehabilitative Disposition program. (*See id.*)

Discovery in this case filled in some details about Dom's and Harris's night on January 10, 2014, leading into the morning of January 11, 2014. Dom testified that she did not recall whether she began her evening at 8 p.m. or 10 p.m., or when she met up with Harris. (ECF No.

66-3 at 55:10-16.) But she testified that she was at multiple establishments that evening, that she drank both beer and shots of alcohol, that she "may have had maybe between four and six" beers, and that she did not remember whether she drank one or two shots. (*Id.* at 50:7-12, 55:1-9; *see also* ECF No. 66-1 at 5.) In her responses to Poon's interrogatories, Dom stated that she "was at the Point Pub in the hour or so" before the accident and that she remembered ordering one beer at Point Pub, but that she was unsure whether she drank the entire beer. (ECF No. 66-5 at 3-4; *see also* ECF No. 66-3 at 44:17-45:8.) Dom testified that she was at Point Pub for "[m]aybe less than a half an hour." (ECF No. 66-3 at 44:20-22.)

After leaving Point Pub, Dom and Harris went to Coney Island, which is a diner in Johnstown. (*See id.* at 44:4-19.) They were at Coney Island for between 5 and 10 minutes at approximately 1:00 a.m. and ordered hotdogs to go. (*Id.*) When the accident occurred, Dom was driving from Coney Island to Harris's apartment. (ECF Nos. 66-1 at 5, 66-5 at 3.) After leaving Point Pub, Dom did not stop for alcohol anywhere else, had no alcohol in the car with her, and Coney Island does not sell alcohol. (ECF No. 66-3 at 58:9-17.)

On January 7, 2016, Poon sued Dom, Harris, and Point Pub for negligence. Poon's claim against Point Pub is based on Pennsylvania's Dram Shop Act, 47 Pa. Cons. Stat. § 4-493.

## II.     Jurisdiction & Venue

Poon is domiciled in Delaware and Dom and Harris are domiciled in Pennsylvania. (ECF No. 4. ¶¶ 3-5.) SVC, LLC—doing business as Point Pub—is a Pennsylvania corporation with a principal place of business in Johnstown, Pennsylvania. (*Id.* ¶ 7.) And a reasonable reading of Poon's first amended complaint and her alleged injuries indicates that the damages she seeks likely exceed $75,000. (*See id.* ¶¶ 30-33.) This Court therefore has subject-matter jurisdiction over

Poon's claims under 28 U.S.C. § 1332(a)(1). Further, because all Defendants reside in the Western District of Pennsylvania and because a substantial part of the events giving rise to Poon's claims occurred here, venue is proper in this district under 28 U.S.C. §§ 1391(b)(1)-(2).

## III. Legal Standard

A grant of summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it can affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine, resulting in denial of the motion, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant has established the absence of a genuine dispute of material fact, then the nonmovant must present specific facts demonstrating the existence of a genuine dispute. *Anderson*, 477 U.S. at 250. In making this determination the court must view all facts and draw all reasonable inferences in the light most favorable to the nonmovant. *Chavarriaga v. N.J Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015). But to avoid summary judgment the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992)). Rather, there must be evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 252.

**IV.     Discussion & Analysis**

A threshold matter warrants discussion before turning to the merits of Point Pub's motion. Neither Point Pub nor Poon followed this Court's procedures governing motions for summary judgment. Local Civil Rule 56 states that a motion for summary judgment "must set forth succinctly, but without argument, the specific grounds upon which the judgment is sought," and that the motion must be accompanied by a separately filed concise statement of material facts, memorandum in support, and appendix containing the documents referenced in the concise statement. Similarly, a party opposing the motion must file a responsive concise statement, a memorandum in opposition, and an appendix to the responsive concise statement. L. Civ. R. 56(C). Point Pub complied with few of these requirements; its motion (ECF No. 61) includes arguments and it filed neither a concise statement of material facts nor an appendix. Poon did little better. Although she filed a memorandum in opposition (ECF No. 67), she did not file a responsive concise statement of material facts[2] or an appendix. Poon did file a "response in opposition" (ECF No. 66)—something this Court's rules do not provide for—in addition to her brief (ECF No. 67), and attached exhibits to that response, but that is not how exhibits offered in opposition are supposed to be submitted. Point Pub's and Poon's submissions are not so deficient that the Court cannot decide the motion for summary judgment, but they will familiarize themselves and comply with this Court's rules going forward.

---

[2] The term "responsive" may suggest that the nonmovant is excused from filing this statement if the movant fails to file his statement. Not so. Use of the term "responsive" is underinclusive; the nonmovant's statement must also include "any other material facts that are allegedly at issue, and/or that the [nonmovant] asserts are necessary for the Court to determine the motion for summary judgment." L. Civ. R. 56(C)(1)(c). In her memorandum, Poon includes plenty of facts that she asserts are necessary to decide the motion—she just did not include these in a statement of material facts as required by the rules.

That brings us to the merits of Point Pub's motion for summary judgment. Poon's claim against Point Pub is based on Pennsylvania's Dram Shop Act, 47 Pa. Cons. Stat. § 4-493, which states in relevant part that it is unlawful for

> any licensee or the board, or any employe[e], servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated.[3]

"A violation of this statute is deemed negligence *per se*, and if the violation is the proximate cause of the plaintiff's injuries, then the defendant is held liable." *Johnson v. Harris*, 615 A.2d 771, 775 (Pa. Super. Ct. 1992) (citing *Majors v. Brodhead Motel*, 205 A.2d 873, 875 (Pa. 1965)). Thus, to prevail on her claim against Point Pub, Poon must establish the following: (1) that an employee of Point Pub served Dom an alcoholic beverage while Dom was visibly intoxicated, and (2) that doing so proximately caused Poon's injuries. *See Fandozzi v. Kelly Hotel, Inc.*, 711 A.2d 524, 525 (Pa. Super. Ct. 1998) (citing *Johnson*, 615 A.2d at 775). Whether a person was *visibly* intoxicated when served is judged by physical appearance rather than medical diagnoses. *Id.* at 528 (citing *Hiles v. Brandywine Club*, 662 A.2d 16, 19 (Pa. Super. Ct. 1995)).

---

[3] Relatedly, § 4-497 provides as follows:
> No licensee shall be liable to third persons on account of damages inflicted upon them off of the licensed premises by customers of the licensee unless the customer who inflicts the damages was sold, furnished or given liquor or malt or brewed beverages by the said licensee or his agent, servant or employe[e] when the said customer was visibly intoxicated.

This provision "shields liquor licensees from liability caused by intoxicated patrons except where it is proven that the liquor licensee provided alcohol to a visibly intoxicated patron who, in turn, causes a third party to sustain injuries away from the licensee's premises." *Encompass Ins. Co. v. Stone Mansion Rest., Inc.*, No. 17-cv-125, 2017 WL 664318, at *4 (W.D. Pa. Feb. 16, 2017).

Point Pub asserts that there is no evidence that Point Pub served Dom alcohol while she was visibly intoxicated and argues that summary judgment in its favor is therefore appropriate. Point Pub points to the deposition testimony of Point Pub's owner and several Point Pub employees and states that none of them remember seeing Dom or Harris on January 10, 2014, and that none of them remember Dom being visibly intoxicated. Point Pub also points out that Dom testified that she was not exhibiting signs of intoxication at Point Pub on January 10, 2014. Point Pub further contends that any observations by the police officers who responded to the accident do not support any inference regarding whether Dom was visibly intoxicated at Point Pub because the officers' observations were made after Dom was at Point Pub. And Point Pub argues that use of expert testimony to establish that Dom was showing signs of intoxication—so-called "relation-back evidence"—is impermissible here under Pennsylvania law.

Point Pub is correct that the record appears devoid of *direct* evidence that Dom was visibly intoxicated when Point Pub served her alcohol. Direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Black's Law Dictionary* (10th ed. 2014). But there is no requirement that a party opposing summary judgment do so by identifying direct evidence. *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) ("While the evidence that the non-moving party presents may be either direct *or circumstantial*, and need not be as great as a preponderance, the evidence must be more than a scintilla." (emphasis added) (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). A party can overcome summary judgment by relying on circumstantial evidence, which is "[e]vidence based on inference and not on personal knowledge or observation." *Black's Law Dictionary* (10th ed. 2014). And the Pennsylvania Superior Court has

held that "a plaintiff can prove dram shop liability in the absence of direct eyewitness evidence that an individual was served alcohol at a time when he or she was visibly intoxicated." *Fandozzi*, 711 A.2d at 527.

The question is thus whether there is sufficient circumstantial evidence for a factfinder to reasonably conclude that Dom was visibly intoxicated when Point Pub served her alcohol. Unfortunately, the cases addressing the question of where that line falls—how much circumstantial evidence is enough to defeat summary judgment—appear inconsistent. Specifically, some are less exacting in their analysis than others. The Court will nevertheless summarize some of them to illustrate what factors courts have examined in deciding the question.

One of the earliest cases addressing how much circumstantial evidence of visible intoxication is sufficient to defeat summary judgment is *Couts v. Ghion*, 421 A.2d 1184 (Pa. Super. Ct. 1980). In that case, a plurality of the Pennsylvania Superior Court concluded that sufficient circumstantial evidence existed to submit the issue of visible intoxication to the jury.[4] The evidence established that the patron had consumed nine drinks over approximately a three-hour period before being served his last (and tenth) drink, that he drove erratically after leaving the establishment and caused an accident an hour or so after being served his last drink, that he did not consume alcohol after leaving the establishment, that he appeared intoxicated to a police officer minutes after the accident, and that his blood-alcohol content was 0.12 percent three hours after the accident.

---

[4] Because *Couts* was a plurality opinion—one judge dissented and one judge concurred in the result—it is not controlling state law. But "[s]ubsequent decisions of [the Pennsylvania Superior Court] have addressed *Couts*, noting that it is not binding, but [have] nevertheless examin[ed] whether similar circumstantial evidence had been presented." *Fandozzi*, 711 A.2d at 527.

In *Speicher v. Reda*, 434 A.2d 183 (Pa. Super. Ct. 1981), the Pennsylvania Superior Court again concluded that sufficient circumstantial evidence of visible intoxication was presented. The court based this conclusion on evidence that the tortfeasor was visibly intoxicated at the scene of the accident, pleaded guilty to driving under the influence of alcohol, and that he was at the bar in question immediately before getting into his car. *Speicher*, 434 A.2d at 171-72. But the court did not discuss how much time passed between the tortfeasor leaving the bar and either the accident or the observations regarding visible intoxication at the scene of the accident.

The Pennsylvania Superior Court reached the same conclusion in *Fandozzi*. The court reasoned that sufficient circumstantial evidence was presented because there was evidence that the patron "drank more than the equivalent of fourteen twelve-ounce beers during the two hours he was in the [establishment]; that immediately after he left, he was stumbling and falling to the ground, and could not identify where he lived; that he was still highly intoxicated when found by police more than four hours later; and that his blood alcohol content was 0.214 percent approximately six hours after leaving the [establishment]." *Fandozzi*, 711 A.2d at 529.

On the other hand, in *Conner v. Duffy*, 652 A.2d 372 (Pa. Super. Ct. 1994), the Pennsylvania Superior Court held that there was insufficient circumstantial evidence to create a factual dispute regarding visible intoxication. There was evidence in that case that the tortfeasor—Duffy—appeared drunk, with slurred speech and bloodshot eyes, to the arresting officer approximately an hour after a baseball game where Duffy had allegedly purchased alcohol. Additionally, there were blood-alcohol test results and relation-back testimony by an expert who "opined that based on the blood alcohol test results, Duffy would have appeared intoxicated during the time he was at the stadium." *Conner*, 652 A.2d at 374. This was held to be insufficient circumstantial evidence.

*Id.* at 375. The court found "significant differences [between these facts] and those in *Couts*, including the lack of erratic driving, the difference in the elapsed time between the blood[-]alcohol testing and the accident, and the fact that there is testimony by [Duffy's friend] that he and Duffy consumed more beer in the car after leaving the stadium while on their way home." *Id.* Unfortunately, the court did not divulge how much time passed between the accident and the blood-alcohol testing, or what Duffy's blood-alcohol level was.

Point Pub relies on two other cases—*Hiles v. Brandywine Club*, 662 A.2d 16 (Pa. Super. Ct. 1995), and *Holpp v. Fez, Inc.*, 656 A.2d 147 (Pa. Super. Ct. 1995)—and asserts that those decisions are relevant to the circumstantial-evidence question presented here. Not so. Neither case addressed this question, and the adequacy or inadequacy of circumstantial evidence was not implicated in either of them.

In *Hiles*, a jury found the tortfeasor—Diviney—liable but determined that the establishment where the tortfeasor had consumed alcohol—Brandywine Club—was not liable because the plaintiff had failed to prove Diviney was visibly intoxicated when he was served alcohol. 662 A.2d at 17. The plaintiff appealed, but his arguments on appeal had nothing to do with the weight of the evidence or the circumstantial-evidence question. The issues on appeal were (1) whether serving alcohol at unlawful hours precluded a licensee from asserting § 4-497's immunity, and (2) whether the trial court erroneously instructed the jury on the plaintiff's burden of proof regarding "visibly intoxicated." *Id.* Before reaching those questions—and this is the part of the decision Point Pub relies on—the court noted the following:

> A review of the record reveals nothing to indicate that Diviney was
> served while visibly intoxicated during his hours at Brandywine.
> Diviney's own testimony was that he could not recall exhibiting

> signs of visible intoxication, nor did Hiles introduce any eyewitness testimony indicating that Diviney was visibly intoxicated. The jury, therefore, had every reason to conclude that Brandywine did not serve Diviney when he was visibly intoxicated. Without the evidence of visible intoxication, a licensee (Brandywine) cannot be found liable for damages to a third party (Connie Hiles) by a customer (Diviney). 45 P.S. § 4-497.

*Id.* at 19. But none of that has any bearing on this case. The court noted that there was *no* evidence of visible intoxication and that the jury's conclusion was therefore correct. The case before the Court is not a "no evidence at all" case and *Hiles* did not address the circumstantial-evidence question presented here—meaning it is inapplicable to that question. As for the suggestion in the quoted paragraph that eyewitness testimony of visible intoxication is necessary, such a requirement was explicitly rejected in *Fandozzi*, 711 A.2d at 527, which was decided approximately three years after *Hiles*.

*Holpp* likewise has no bearing on the evidentiary issue presented here. In that case, summary judgment in the establishment's favor was affirmed because

> neither [the plaintiff] nor any other witness was able to identify the patrons who had been involved in the altercation which had caused [the plaintiff's] injuries. Whether any of them had been intoxicated or whether they had been served alcoholic beverages by [the establishment] while visibly intoxicated was not known and could not be proved.

*Holpp*, 656 A.2d at 150. All this reaffirms is that—to support liability—there must be some evidence from which a factfinder could reasonably conclude that the tortfeasor was served while visibly intoxicated. But that premise is not in dispute here, nor could it reasonably be; it is what the statute says is required.

Viewed against the backdrop of the cases that did address the evidentiary question presented here, the circumstantial evidence in this case—although scant—is sufficient to create a factual dispute regarding whether Dom was visibly intoxicated when she was served alcohol by Point Pub. Dom had consumed a substantial amount of alcohol before arriving at Point Pub. Specifically, construing the facts in the light most favorable to Poon—as the Court is required to on summary judgment—Dom had two shots of alcohol and six beers in a short amount of time (if the Court assumes she started drinking at 10 p.m.). The accident occurred at approximately 1:20 a.m., which was within an hour "or so" of Dom leaving Point Pub—meaning Dom was at Point Pub around 12:20 a.m. and was served a beer sometime around then. (*See* ECF No. 66-5 at 4.) That beer was the last drink she consumed before the accident. (*See* ECF No. 66-3 at 58:9-17.) At approximately 1:26 a.m., the responding police officers noticed visible signs of intoxication on Dom's part, including a strong odor of alcohol, bloodshot eyes, slurred speech, and officer Repak observed her falling to the ground while she was walking back to Harris's car. (*See* ECF No. 66-6.) Similarly, a witness to the accident also heard Dom slurring her speech and noticed that she smelled like alcohol. (ECF No. 66-11 at 43:20-44:2.) And Dom's blood-alcohol test—which was administered approximately two hours after she left Point Pub—showed a blood-alcohol level of 0.176%. (*See* ECF No. 66-6 at 6.)

Based on this evidence—none of which speaks directly to Dom's state at the moment she ordered a beer at Point Pub—a jury may very well conclude that Poon has not met her burden of establishing that Point Pub served Dom while she was visibly intoxicated. But they can also conclude that it is more likely than not that Dom was exhibiting the same signs of intoxication when she ordered a beer at Point Pub as she was at the scene of the accident. The accident appears

-13-

to have occurred between ninety minutes to an hour after Dom was served at Point Pub and the evidence presented—the amount of alcohol consumed, the chronology of the night, the signs of intoxication at the scene of the accident, and the blood-alcohol test results—allows for the inference that Dom's visible signs of intoxication were about the same after the accident as they were when she was served at Point Pub. That such an inference can be drawn means that summary judgment in Point Pub's favor is inappropriate.

This leaves Point Pub's argument that the use of expert testimony to establish that Dom was showing signs of intoxication when she was served—relation-back evidence—is impermissible here under Pennsylvania law. Because the Court concludes that there is sufficient circumstantial evidence to overcome summary judgment without considering the relation-back evidence of Poon's expert, the Court need not and therefore will not decide that question at this time.

## V. Conclusion

Point Pub's motion for summary judgment will be denied. A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONICA S. POON, | ) | Case No. 3:16-cv-06 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| DIANNAH RAE DOM, REGINA ANN HARRIS, and SVC, LLC, *individually and t/a and d/b/a as* POINT PUB, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

NOW, this 31st day of July 2017, upon consideration of Point Pub's motion for summary judgment (ECF No. 61) and for the reasons in the memorandum opinion accompanying this order, it is **HEREBY ORDERED** that Point Pub's motion for summary judgment is **DENIED**.

BY THE COURT:

*[signature: Kim R. Gibson]*

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE